## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

```
------------------------------- x
VICTOR J. VELASCO,                :
                                  :
         Plaintiff,               :
                                  :
v.                                :
                                  :
KARA PHILLIPS, MALLORY            :   Civil No. 3:23-cv-591 (AWT)
MUZYKOSKI, INGRID FEDER, PAUL     :
FIORE, LIEUTENANT KUDZAL, RN      :
VERITO, and MATTHEW COLBY,        :
                                  :
         Defendants.              :
------------------------------- x
```

### RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The plaintiff, Victor J. Velasco, is currently incarcerated at MacDougall-Walker Correctional Institution within the Connecticut Department of Correction ("DOC").[1] He initiated this action by filing a complaint pursuant to 42 U.S.C. § 1983 against fourteen defendants in their individual and official capacities.[2] In his complaint, the plaintiff asserted five

---

[1] The court may "take judicial notice of relevant matters of public record." Giraldo v. Kessler, 694 F.3d 161, 164 (2d Cir. 2012) (citing Shmueli v. City of New York, 424 F.3d 231, 233 (2d Cir. 2005); Fed. R. Evid. 201(b)). A search on the publicly available DOC website under the inmate search function shows that the plaintiff was sentenced to fifty years of imprisonment on May 15, 1998, and is now housed at MacDougall-Walker Correctional Institution. See https://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=213065.

[2] These defendants are: Nurse Supervisor Kara Phillips, APRN Mallory Muzykoski, Dr. Ingrid Feder, Correctional Officer Paul Fiore, Lieutenant Kudzal, Correctional Officer Joseph Nemeth, Lieutenant Michael Peterson, Hearing Officer Lieutenant Dousis, Correctional Officer Flores, Correctional Officer Colby, Warden Robert Martin, Deputy Warden Carlos Nunez, Captain Mangual, and RN Verito.

claims: (1) violation of the Prison Rape Elimination Act, 34 U.S.C. § 30301 et seq. ("PREA") by an act of voyeurism, (2) deliberate indifference to medical needs and false imprisonment in violation of the Eighth Amendment, (3) violation of his Fourteenth Amendment right to due process, (4) a violation of the Fourth Amendment (described as an Eighth Amendment claim) based on defendant Fiore's video recording of the plaintiff while the plaintiff was in his cell, and (5) falsification of his medical records in violation of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA"). See Compl. (ECF No. 1).

On August 11, 2023, the court determined the plaintiff could proceed on (1) his Fourth Amendment claim (described as an Eighth Amendment claim) based on the video recording against Correction Officer Fiore, Correction Officer Colby, and Lieutenant Kudzal in their individual and official capacities; and (2) his Eighth Amendment claim for deliberate indifference to medical needs against Corrigan-Radgowski Correctional Center ("Corrigan") staff Nurse Supervisor Phillips, Correction Officer Fiore, RN Verito, APRN Muzykoski, and Dr. Feder in their

-2-

individual and official capacities based on the removal of his walker.[3] See Initial Review Order (ECF No. 12) ("IRO"), at 20.

The court dismissed as not plausible the plaintiff's PREA claim; HIPAA claim; Fourteenth Amendment due process claim; false imprisonment claim; Eighth Amendment deliberate indifference to medical needs claim based on the cut on his leg; and claims against Warden Martin. See id. at 19-20.

On November 20, 2024, the defendants filed a motion for summary judgment on the surviving Fourth and Eighth Amendment claims on grounds of (1) the plaintiff's failure to exhaust his administrative remedies, and (2) his inability to prevail on the merits of his Eighth Amendment claim. See Defs.' Mem. Supp. Summ. J. (ECF No. 50-2) ("Defs.' Mem."). On February 10, 2025, the plaintiff filed his operative opposition to the motion for summary judgment. See Pl.'s Obj. to Defs.' Mot. Summ. J. (ECF No. 59[4]) ("Pl.'s Opp'n").

---

[3] Because the plaintiff is no longer housed at Corrigan, the court dismisses all claims for official capacity relief as moot. See Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006) ("an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility"). In addition, to the extent he asserts official capacity claims for monetary damages against the defendants (all state employees), such claims are dismissed as barred by the Eleventh Amendment. See e.g., Kentucky v. Graham, 473 U.S. 159, 169 (1985). Accordingly, the court dismisses all official capacity claims. See 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

[4] Two objections were docketed, both dated January 24, 2025, ECF No. 59 (docketed as two parts, the main document and one attachment) and ECF No. 60 (docketed as one document). This ruling refer only to ECF No. 59.

For the reasons set forth below, the motion for summary judgment is being granted.

## I.    FACTUAL BACKGROUND

The relevant facts are taken from the defendants' Rule 56(a)(1) Statement of Material Facts (ECF No. 50-3) ("DSF") and from the record, including the complaint and all exhibits submitted in this matter. See Defs.' Attachs. A-F (ECF Nos. 50-4 to 50-15); ECF No. 51 (manually filed DVD); Pl.'s Attachs. A-V, (ECF Nos. 59, 59-1 (ECF No. 59, A-G, at 24-49; ECF No 59-1, H-V, at 1-38)).

The plaintiff has not filed a Local Rule 56(a)2 Statement in response to the defendants' Local Rule 56(a)1 Statement. The defendants' motion for summary judgment certifies that they provided him with the Notice to Self-Represented Litigants Concerning Motion for Summary Judgment as Required by Local Rule of Civil Procedure 56(b) to inform him of the requirements for filing his papers in opposition to the motion for summary judgment under Local Rule 56(a). See Notice (ECF No. 50-1). Local Rule 56(a)1 provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)2 Statement required to be filed and served by the opposing party in

accordance with this Local Rule, or the [c]ourt sustains an objection to the fact." Local Rule 56(a)3 provides that "each denial in an opponent's Local Rule 56(a)2 Statement[] must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial, or (2) other evidence that would be admissible at trial."

Self-represented litigants are not relieved of their obligation to file a Local Rule 56(a)2 statement. See Wu v. Nat'l Geospatial Intel. Agency, No. 3:14-cv-01603 (DJS), 2017 WL 923906, at *2 (D. Conn. Mar. 8, 2017) (noting in the context of a pro se plaintiff's failure to submit a Local Rule 56(a)2 statement that "pro se parties are not excused from abiding by the Federal Rules of Civil Procedure" (internal quotation marks and citation omitted)). Thus, Local Rule 56(a)1 allows this court to deem admitted the defendant's statement of facts for purposes of this motion where the statement is supported by cited evidence. See Local Rule 56(a)1; Tyson v. Willauer, 289 F. Supp. 2d 190, 194 (D. Conn. 2003) (deeming admitted for purposes of summary judgment motion all facts set forth in the defendants' L. R. 56(a)1 Statement); Small v. Clements, No. 3:18-cv-01731 (KAD), 2019 WL 5727388, at *1 n.1 (D. Conn. Nov. 5, 2019) (deeming uncontroverted facts admitted where a litigant failed to file a responsive statement of facts).

**A.    Video Recording and Removal of Walker on May 6, 2020**

On May 6, 2020, Correction Officer Fiore used a hand-held video recorder to make a two-minute video recording documenting his observation of the plaintiff jogging in his cell. See DSF ¶¶ 1-3. Officer Fiore notified his supervisor, Lieutenant Kudzal, and the Corrigan medical staff about his observations. See id. ¶ 4; Defs.' Attach. F, Decl. of Paul Fiore (ECF No. 50-14) ("Fiore Decl.") ¶ 6. The recording does not show the plaintiff using the toilet.

Nurse Phillips avers that she reviewed Officer Fiore's video with APRN Muzykoski and Dr. Feder. See Defs.' Attach. E, Decl. of Kara Phillips (ECF No. 50-12) ("Phillips Decl.") ¶ 4. She avers that Dr. Feder made the decision to discontinue the order for the walker. See id. ¶ 5.

Medical and correctional staff removed the walker that had been provided to the plaintiff. See id. ¶ 6. The plaintiff was issued a disciplinary report charging him with flagrant disobedience for his conduct during the retrieval of the walker. See DSF ¶ 7.

**B.    Administrative Directives**

There is no genuine issue as to the fact that the administrative remedies set forth in State of Connecticut DOC Administrative Directive 9.6 and Administrative Directive 8.9

were in effect on May 6, 2020. <u>See</u> Defs.' Attach. A, Dir. 9.6

(ECF No. 50-4) ("Dir. 9.6"); Defs.' Attach. B, Dir. 8.9 (ECF No.

50-5) ("Dir. 8.9").[5]

### 1.    Administrative Directive 9.6

For all matters relating to any aspect of a prisoner's

confinement that are subject to the Commissioner's authority and

that are not specifically identified in subsections (B) through

(I) of Administrative Directive 9.6(4), the applicable remedy is

the Inmate Grievance Procedure set forth in 9.6(6)(A)-(N). <u>See</u>

Dirs. 9.6(4)(A), 9.6(6). Administrative Directive 9.6(6)

requires that an inmate first attempt to resolve the claim or

issue informally before filing an administrative remedy (or

grievance). <u>See</u> Dir. 9.6(6)(A). He or she may attempt to

verbally resolve the issue with an appropriate staff member or

supervisor. <u>See</u> <u>id.</u> If attempts to resolve the matter orally are

not effective, the inmate must also make a written attempt using

Inmate Request Form, CN 9601, and send that Form to the

appropriate staff member. <u>See</u> <u>id.</u> If the inmate does not receive

a response to the written request within fifteen business days

---

[5] For the relevant time period in this case, the 2013 version of Directive 9.6 (in effect from August 15, 2013 until April 29, 2021) and the 2012 version of Directive 8.9 (in effect from July 24, 2012 until April 29, 2021) controlled the plaintiff's exhaustion process for his Fourth and Eighth Amendment claims, respectively. <u>See</u> <u>Azukas v. Semple</u>, No. 3:22-cv-00403 (MPS), 2024 WL 4227009, at *7 (D. Conn. Sept. 18, 2024) (applying versions of administrative directive in effect at time relevant to the occurrence of Eighth Amendment

or the inmate is not satisfied with the response to his or her request, he or she may file a Level 1 grievance using Inmate Administrative Remedy Form, CN 9602. See Dir. 9.6(6)(C).

The Level 1 grievance must be filed within thirty calendar days from the date of the occurrence or discovery of the cause of the grievance and should include a copy of the response to the Inmate Request Form or explain why the response is not attached. See id. The Unit Administrator shall respond in writing to the Level 1 grievance within thirty business days of his or her receipt of the grievance. See Dir. 9.6(6)(I).

The inmate may appeal the Unit Administrator's disposition of the grievance or the Unit Administrator's failure to dispose of the grievance in a timely manner to Level 2. See Dir. 9.6(6)(G) and (K). The Level 2 appeal of a disposition of a Level 1 grievance must be filed within five calendar days from the inmate's receipt of the decision disposing of the Level 1 grievance. See Dir. 9.6(K). A Level 2 appeal of the Unit Administrator's failure to dispose of the Level 1 grievance in a timely manner must be filed within sixty-five days from the date the Level 1 grievance was filed by the inmate. See Dir. 9.6(M).

A District Administrator is responsible for reviewing a Level 2 appeal. See Dir. 9.6(6)(K). A response to the Level 2

claims at issue in the case).

appeal must be issued within thirty business days of receipt of
the appeal. See id. A Level 3 appeal may be filed to challenge a
department policy, the integrity of the grievance procedure or a
Level 2 appeal to which there has been an untimely response. See
Dir. 9.6(6)(L). A Level 3 appeal must be filed within five
calendar days from the inmate's receipt of the decision
disposing of the Level 2 appeal. See id. A Level 3 appeal of the
District Administrator's failure to dispose of the Level 2
appeal in a timely manner must be filed within thirty-five days
of the date the Level 2 appeal was filed by the inmate. See Dir.
9.6(6)(M). The Commissioner of Correction or his or her designee
is responsible for reviewing the Level 3 appeal. See Dir.
9.6(6)(L). A response to a Level 3 appeal must be issued within
thirty business of receipt of the appeal. See id.

### 2.    Administrative Directive 8.9

Administrative remedies for medical or mental health claims
are set forth in State of Connecticut Department of Correction
Administrative Directive 8.9, entitled Administrative Remedy for
Health Services. See Dirs. 9.6(4)(L) and 8.9. Administrative
Directive 8.9 provides Health Services Review ("HSR") procedures
to address two types of issues or claims related to the medical,
dental or mental health care of an inmate: (1) diagnosis and
treatment issues and (2) administrative health care

issues involving a procedure, practice, policy or the improper conduct of a health services provider. See Dir. 8.9(9)(A)-(B).

An inmate seeking review of an issue involving a diagnosis or treatment or an administrative health care issue involving a procedure, practice, policy or the improper conduct of a health services provider must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor. See Dir. 8.9(10).[6] The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request. See id. If the informal resolution of the inmate's issue is unsatisfactory or unsuccessful, the inmate may apply for an HSR using the Inmate Administrative Remedy Form, CN 9602, and checking off either the "Diagnosis/Treatment" box or the "All Other Health Care Issues" box for an administrative issue. See Dir. 8.9(11)-(12).

If the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental or mental health

---

[6] Unlike Directive 9.6, Directive 8.9 does not have a time requirement for an inmate's submission of an HSR. See Raynor v. Erfe, No. 3:20-cv-01102 (VLB), 2022 WL 972441, at *6 (D. Conn. Mar. 31, 2022) ("The Court will not impose a timeliness condition on [an inmate]'s health service review requests where the DOC has not done so in [its] own directives."); Carter v. Revine, No. 14-cv-01553 (VLB), 2017 WL 2111594, at *15 (D. Conn. May 15, 2017) (noting the "stark contrast" between Directive 9.6, which imposes a thirty-day statute of limitations on the grievance process, and Directive 8.9, which "contains no statute of limitations for the initial filing of a Review of an Administrative Issue").

condition, the HSR coordinator is required to schedule an HSR appointment with a physician, dentist, psychologist/ psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible. See Dir. 8.9(11)(A). If, after the appointment, the physician concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her HSR remedy. See id. If the physician reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. See Dir. 8.9(11)(B).

If the inmate seeks review of an administrative health care issue, the HSR coordinator is required to evaluate, investigate and decide the matter within thirty days. See Dir. 8.9(12)(A). If the inmate is not satisfied with the response to his or her request for review, he or she may appeal the decision within ten business days of receiving the decision. See Dir. 8.9(12)(B). The health services provider or the designated facility health services director must decide the appeal within fifteen business days of receiving the appeal. See Dir. 8.9(12)(C). If the issue being raised relates to a health services policy of the

Department, the inmate may appeal to the DOC Director of Health Services within ten business days of receiving the decision from the health services provider or designated facility health services director. See Dir. 8.9(12)(D).

### C. The Plaintiff's Administrative Grievances

The defendants have submitted a declaration of Nicolas Jacaruso, who serves as the Administrative Remedies Coordinator at Corrigan. Defs.' Attach. C, Decl. of Nicholas Jacaruso (ECF No. 50-6) ("Jacaruso Decl."). He avers that he searched for all administrative remedies the plaintiff filed between January 1, 2020 and July 1, 2023 while he was housed at Corrigan. Id. ¶ 5.

Attachments to Jacaruso's declaration include the following administrative remedies filed while the plaintiff was at Corrigan during that period of time between January 1, 2020 through July 1, 2023 and not returned without disposition:

- IGP #140-20-091 complaining of his inability to access his legal work and property;
- IGP #140-20-140 concerning his dietary needs;
- IGP #140-20-145 complaining about his assault by a correctional officer and need for medical attention;
- IGP #140-21-085 claiming that he had been set up by other officers to be attacked by another inmate on December 7, 2020; and,
- IGP #140-21-116 maintaining that he was subjected to deprivation of his legal and medical notes after an illegal cell search.

Jacaruso Decl., Attach. 1 (ECF No. 50-7), at 1-16, 18-26.[7]

Attachments to the declaration also include a grievance related to several "Request[s] For Reasonable Accommodations" which were sent to the "Unit ADA Coordinator," who is not a defendant. This grievance against the Unit ADA Coordinator alleges that she discriminated against the plaintiff:

> I have submitted several CN 101902 (Request for Reasonable Accommodations) forms to Unit ADA Coordinator Iozzia (See attached forms and responses) and CS Iozzia does not follow the 10.19 Administrative Directive in re: Americans with Disabilities Act. Iozzia has grossly deviated from her obligations as an employee of a public agency and acted to discriminated against me because of my disability. Iozzia has somehow received or attained information from someone in the medical department pertaining to my medical records/information without attaining any signed CN 4401, Authorization to Obtain and/or Disclose Protected Health Information, from me. In fact, I have never even seen CS Iozzia at all!
>
> CS Iozzia has, without any justification in Law, Statute or Directive, denied me all of my requests for reasonable accommodations without reason. CS Iozzia claims, "Per medical you do not need a handicap cell." Who in medical said this? And who is giving out my medical information to CS Iozzia without my authorization? CS Iozzia completely ignored her duties under the 10.19 Administrative Directive, Sections 5 and 6. Even when I asked for help/assistance in filing a violation of my rights under the Americans with Disabilities Act, CS Iozzia never came to see me or render any assistance. In fact, CS Iozzia stated, "You have access to I.L.A.P. [Inmates' Legal Assistance Program] for assistance." The inmate handbook says inmates who need assistance with A.D.A. issues can ask our Unit Counselor or Unit Manager for assistance. Why

---

[7] The page numbers cited in this ruling refer to the page numbers assigned by CM/ECF (the court's electronic case filing system) and not to the page numbers of the original documents, if any, except for citations to the plaintiff's deposition transcript.

state that in the handbook, just to waste the time inmates
need to get an issue resolved?

> None of CS Iozzia's responses have any comments from
> medical at all. Iozzia was, per directive, to send the
> request to medical and have medical respond in writing on
> the CN 101902. Iozzia outright discriminated against me
> outside of Department Policy and in violation of State and
> Federal Law. I ask for a resolution of this matter in, 1.)
> receiving a walker; 2.) being given a handicap cell; 3.)
> Replacing the Unit ADA Coordinator; 4.) Replacing the Unit
> Administrator who has not been supervising his
> subordinates; and 5.) I do not waive any rights or remedies
> at law.

Jacaruso Decl., Attach. 2 (ECF No. 50-8), at 14. The response

denying this grievance stated:

> A review of the accommodation forms provided with this
> appeal has been completed. There is no violation of
> process. Medical was contacted and reviewed your needs and
> responded directly to the ADA coordinator that you did not
> need an accessible cell, walker or wheelchair. This appeal
> does not address complaints of the coordinator or
> administrator, please use the grievance process for that.

Id. The box at the bottom of the grievance was checked to

indicate that the plaintiff "exhausted DOC's Administrative

Remedies." Id.

In addition, attachments to the declaration include the

plaintiff's appeals concerning the disciplinary hearings on the

charges for flagrant disobedience issued on April 7, 2020,

Jacaruso Decl., Attach. 1 (ECF No. 50-7), at 14, 16; flagrant

disobedience for his conduct on May 6, 2020, Jacaruso Decl.,

Attach. 2 (ECF No. 50-8), at 8-11; and charges for refusing

-14-

housing issued on July 1, 2020 and August 18, 2020, id. at 25-
31, as well as numerous administrative remedies that were
returned without disposition, Jacaruso Decl., Attach. 3 (ECF No.
50-9).

The defendants have also attached a medical grievance
(#2376) dated July 14, 2022 that was filed by the plaintiff for
review of an administrative issue. See Defs.' Attach. D, Decl.
of Nicole Hernandez (ECF No. 50-10) ("Hernandez Decl.") ¶ 6;
Hernandez Decl., Attach. (ECF No. 50-11), at 2, 4. In this
medical grievance the plaintiff asserted claims against
individuals who are not defendants:

> I have reached out to Medical here and have been
> deliberately attacked thru Restrictive Housing Placement,
> falsified Disciplinary Action and denial of the use of a
> wheelchair as well as a blanket refusal of actual and
> reasonable medical care by you in the medical Department.
> Specifically, R. Williams, D. Broadly and Krystal Brennan
> have falsified th[ei]r credentials as medical caregivers
> when in fact they deny medical treatment even after knowing
> that a medical condition exists only to skirt th[ei]r
> official duties. They get out of work by using the
> Department of Correction disciplinary system to punish me
> for seeking medical attention. Broadly has denied me the
> use of a wheelchair out of spite and Williams has denied me
> the use of a wheelchair for "LOGISTICAL" reasons (this is
> his choice of word). For months I have been having
> respi[ra]tory issues and shortness of breath. I sent a
> request form with my issue back in February of 2022 and
> rec[ei]ved a response an entire week later from medical. I
> was instructed to sign up for "SICK CALL" only to be seen
> by nurse Alexis. She told me she would put me in to be seen
> by Doctor Broadly. I was never seen by Broadly. In fact I
> have never been seen by Broadly at all, ever. As I write
> this complaint this very day of July 14, 2022, I still have

not been seen by Doctor Broadly. I recently found out that Doctor Broadly is not even a Doctor. She does not even have the experience to evaluate serious medical conditions and has already made several life threatening decisions which have caused serious risk of death and injury to other prisoners. Broadley and Williams deny me medical assistance just because they want to meet the logistical needs of the Facility, namely, they cannot justify holding a prisoner who is a Medical Level 4 at a Medical Level 3 facility like Cheshire Correctional Institution. They have been hiding me in this facility in a prison cell that is not certified by the Americans with Disabilities Act and is in fact a regular cell with no grab bars at all. Even after falling several times and rec[ei]ving cuts, scrapes and bruises from falls within the cell, these Medical Officers have entirely blanketed my medical records with a cloak of censorship. These incidents are not put in my medical records because this might cause unwanted attention as to what they are doing to me and what they are refusing me. Brennan, with the help of Broadley had me sent to Restrictive Housing, placed into a dry cell and ordered the Correctional Officers in the Restrictive Housing Unit to keep my cell water off and to deprive me of the use of my walker within my cell. She did this because I had complained of chest pains and she had to bring a wheelchair for me to get to the medical unit. Brennan, on camera, claimed that Broadley reviewed the printouts of E.K.G.'s made while I was in the medical unit and that there was nothing wrong with me. After I was released from the Restrictive Housing Unit, Broadley decided to cover her tracks and ordered a blood test for me which came back with high cholesterol results. Every day in Restrictive Housing I was suffering chest pains and shortness of breath. Sometimes Correctional Officers had to help me prepare for showers in the Restrictive Housing Unit because there are no ha[n]dicap accessible cells or showers or accom[m]odations. The Medical Unit also refuses to order me a safe medical diet of foods that I am not allergic to because they don't want to pay for safe foods for me. As a result I have to purchase the majority of my food from the prison commissary and even then[]I am severely limited as to safe foods because commissary items are[]loaded with whole wheat, wheat bran, soybean and soybean oil, egg white, peanut and cows milk products, all of which I am allergic to. 98% of all meals served by the prison contain

-16-

these products which I cannot eat without allergic
reactions, yet medical refuses to address this issue.
Brennan would rather falsify statements against me as
opposed to addressing my medical con[c]erns. She ordered
deprivation of water for me only because I sought medical
help. I have included requests to the Medical Supervisor
and Broadley and respon[se]. I also attached a copy of
Broadley's Notification of Test Results. I have not
rec[ei]ved any response from Broadley as to the June 21,
2022 request, as I already anticipated since she knows that
I am aware of her devious tactics and attempt to set me up
again with some false claim of refusing housing.

 I request reasonable medical care, a wheelchair, a
medically appropriate diet, grab bars within my cell and
outside of the handicap shower. I also seek fi[nan]cial
compensation against all named medical staff for wrongs
they have commit[t]ed against me. I seek and request that
they be fired from employment with the Department of
Correction in any capacity and if they are contracted, I
request a termination of such contract. I also request for
a permanent notation in their Personal Files of misconduct.
I do not waive any remedy under law. I also request that
all medical person[n]el[] that is employed by the
Department of Corrections or contracted require name tags
that display not only their names, but their credentials as
well, so that prisoners are not deceived by medical staff
as to what they are able to do and what level of care they
are able to provide.

Id. On July 25, 2022, this grievance was denied for the

following reason:

 All CT DOC medical staff are properly credentialed. Your
 medical care has been administered appropriately and
 without bias.

Id. at 3. The reviewer checked the box to indicate the decision

was not subject to further appeal. See id.

 The plaintiff maintains in his opposition papers that

Jacaruso failed to include two additional administrative

remedies that the plaintiff filed, one dated May 20, 2020 and another dated July 11, 2020. See Pl.'s Opp'n, at 4.

First, in his administrative remedy IGP #27209, dated May 20, 2020 and marked as received on June 11, 2020, the plaintiff complained about the lack of pain medication and the lack of an assistive device to aid with his mobility; he requested his prior pain medication, return of his assistive device, removal of the APRN who took him off his pain medication, and compensatory damages. See id. at 39. This remedy was rejected, and the stated grounds were that the plaintiff had not "attach[ed] evidence of an attempt at informal resolution[;]" "inmates do not dictate how staff issues are addressed[;] and "HSR is not for monetary gain." Id.

Second, the plaintiff submits administrative remedy IGP #27409, dated July 11, 2020 and marked as received on July 23, 2020. Id. at 41. In it, the plaintiff requested answers to two questions:

1) whether it was part of a medical treatment plan to video record [him] in [his] cell; and 2) who devised this plan.

Id.[8] IGP #27409 received the disposition of "Upheld", id., meaning that his "application for Administrative Remedy is

---

[8] The plaintiff has not submitted the first page of this administrative remedy, and the court cannot discern whether it was filed under the procedure for Directive 9.6 or that for Directive 8.9.

-18-

granted", Dir. 8.9(3)(J). The plaintiff received the following
answers to his two questions:

> 1) It is not part of any medical treatment plan to video
> record you.
>
> 2) No one; because it is not part of any medical treatment
> plan.

Pl.'s Opp'n, at 41.

## II.   LEGAL STANDARD

A motion for summary judgment may not be granted unless the
court determines that there is no genuine issue of material fact
to be tried and that the facts as to which there is no such issue
warrant judgment for the moving party as a matter of law. See
Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317,
322-23 (1986); Gallo v. Prudential Residential Servs., 22 F.3d
1219, 1223 (2d Cir. 1994). Rule 56(c) "mandates the entry of
summary judgment . . . against a party who fails to make a
showing sufficient to establish the existence of an element
essential to that party's case, and on which that party will bear
the burden of proof at trial." Celotex, 477 U.S. at 322.

When ruling on a motion for summary judgment, the court must
respect the province of the jury. The court, therefore, may not
try issues of fact. See, e.g., Anderson v. Liberty Lobby, Inc.,
477 U.S. 242, 255 (1986); Donahue v. Windsor Locks Bd. of Fire
Comm'rs, 834 F.2d 54, 58 (2d Cir. 1987); Heyman v. Commerce of

Indus. Ins. Co., 524 F.2d 1317, 1319-20 (2d Cir. 1975). It is well-established that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge . . . ." Anderson, 477 U.S. at 255. Thus, the trial court's task is "carefully limited to discerning whether there are any genuine issues of material fact to be tried, not deciding them. Its duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution." Gallo, 22 F.3d at 1224.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. An issue is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248 (internal quotation marks omitted). A material fact is one that would "affect the outcome of the suit under the governing law". Id. As the Court observed in Anderson: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." Id.

When reviewing the evidence on a motion for summary judgment, the court must "assess the record in the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-movant's] favor." Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Delaware & Hudson Ry. Co. v. Consolidated Rail Corp., 902 F.2d 174, 177 (2d Cir. 1990) (internal quotation marks omitted, alteration in original)). Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence. "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trustees of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (Calabresi, J., dissenting) (internal quotation marks omitted) (quoting Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990)).

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Weinstock, 224 F.3d at 41. "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," id., if the movant demonstrates an absence of such issues, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material

-21-

facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial," Aslanidis v. United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (emphasis, quotation marks and citations omitted). "Accordingly, unsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Because the plaintiff is proceeding pro se, the court must read the plaintiff's pleadings and other documents liberally and construe them in a manner most favorable to the plaintiff. See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Moreover, because the process of summary judgment is "not obvious to a layman," Vital v. Interfaith Medical Ctr., 168 F.3d 615, 620 (2d Cir. 1999) (internal quotation marks and citations omitted), the court must ensure that a pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id. at 620-21. Thus, the court may itself notify the pro se plaintiff as to the nature of summary judgment; the court may find that the opposing party's memoranda in support of summary judgment provide adequate notice; or the court may determine, based on thorough review of the record, that the pro se plaintiff understands the nature, consequences, and obligations of summary judgment. See id.

After reviewing the defendant's submissions in support of summary judgment and the plaintiff's submission in opposition to summary judgment in this case, the court concludes that the plaintiff understands the nature, consequences and obligations of summary judgment. First, the defendant served the plaintiff with the notice to <u>pro</u> <u>se</u> litigants required by Local Rule 56(b). Second, the defendant's memorandum states the nature and consequences of summary judgment. Third, the plaintiff filed an opposition to the defendants' motion for summary judgment in which he demonstrates that he understands the nature, consequences and obligations of summary judgment.

## III. DISCUSSION

The defendants argue that: (1) the plaintiff failed to exhaust his available administrative remedies with respect to both his Fourth Amendment and Eighth Amendment claims, as required by the Prison Litigation Reform Act ("PLRA"); and (2) the plaintiff's Eighth Amendment claim fails as a matter of law. Because there is no genuine issue as to the fact that the plaintiff failed, with respect to both of these claims, to exhaust his available administrative remedies, the defendants' motion for summary judgment is being granted.

A.    **PLRA Exhaustion**

The PLRA requires a prisoner to exhaust all administrative remedies prior to filing a federal lawsuit regarding prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement of Section 1997e(a) "applies to all inmate suits about prison life," Porter v. Nussle, 534 U.S. 516, 532 (2002), "even where the relief sought . . . cannot be granted by the administrative process", Woodford v. Ngo, 548 U.S. 81, 85 (2006) (citing Booth v. Churner, 532 U.S. 731, 741 (2001)).

"[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 218 (2007). Thus, to satisfy the exhaustion requirement, an inmate must avail themselves of "all steps that the [prison-grievance system] holds out, and do[] so properly." Woodford, 548 U.S. at 90 (internal quotation marks and citation omitted).

An inmate's failure to exhaust administrative remedies is only excusable if the administrative remedies were not truly "available," i.e., the administrative remedy is "officially on

the books" but not truly available in practice. Ross v. Blake,
578 U.S. 632, 643 (2016). The Supreme Court has identified three
circumstances in which an administrative remedy is considered to
be unavailable:

> [1.] when (despite what regulations or guidance materials
> may promise) it operates as a simple dead end—with officers
> unable or consistently unwilling to provide any relief to
> aggrieved inmates;
> [2. when a procedure is] so opaque that it becomes,
> practically speaking, incapable of use; [or]
> [3.] when prison administrators thwart inmates from taking
> advantage of a grievance process through machination,
> misrepresentation, or intimidation.[9]

Id. at 643-44.

Because "failure to exhaust is an affirmative defense,"
Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009), it is the
defendants' burden to prove that an inmate did not exhaust his
claim prior to filing the action in court. See, e.g., Williams v.
Priatno, 829 F.3d 118, 126 n.6 (2d Cir. 2016); Mago v. Finnucan,
3:20-cv-01466 (MPS), 2023 WL 4850673, at *2 (D. Conn. July 28,
2023). "Once this burden is met, the plaintiff must show that he
did exhaust his administrative remedies or that the
administrative remedy is not available in practice." Wright v.

---

[9] "The three circumstances discussed in Ross do not appear to be
exhaustive[.]" Williams v. Priatno, 829 F.3d 118, 123 n.2 (2d Cir. 2016).
However, "[i]n considering the issue of availability . . . the Court is
[still] guided by these illustrations." Smith v. Perez, No. 3:19-cv-01758
(VAB), 2023 WL 4554946, at *6 (D. Conn. Jul. 14, 2023).

Snyder, 3:21-cv-00104 (SVN), 2023 WL 6379451, at *4 (D. Conn. Sep. 30, 2023).

Here, the plaintiff concedes that he did not exhaust his administrative remedies and relies on the three exceptions to the PLRA exhaustion requirement identified in Ross, 578 U.S. at 642–44. See Pl.'s Opp'n, at 2 ("The Plaintiff must confess that the Plaintiff did not exhaust his administrative remedies . . . . However, the Plaintiff does assert that he did exhaust his administrative remedies as were AVAILABLE to him at the time of the claims in the Plaintiffs' Complaint.").

The record here confirms that the plaintiff did not exhaust his administrative remedies and shows that administrative remedies were available to him.

### B.  Fourth Amendment Claim

At the initial review stage, the court permitted the plaintiff to proceed on a Fourth Amendment claim based on his allegations that Officer Fiore illegally recorded the plaintiff while the plaintiff was in his cell, Officer Colby assisted Officer Fiore in this endeavor, and Lieutenant Kudzal was aware of and did not prevent the recording. See IRO, at 5, 17.

### 1.  Exhaustion

The plaintiff was required to exhaust the established procedures set forth in Administrative Directive 9.6 for his

-26-

Fourth Amendment claim against Correction Officer Fiore,
Correction Officer Colby, and Lieutenant Kudzal arising from
Correction Officer Fiore recording the plaintiff in his cell on
May 6, 2020. See Gonzalez v. Payne, No. 3:19-cv-01676 (CSH),
2023 WL 2666671, at *3 (D. Conn. Mar. 28, 2023) (applying
"established procedure" under Administrative Directive 9.6 to
Fourth Amendment claim against custody staff). A grievance must
"provide enough information about the conduct of which
[prisoners] complain to allow prison officials to take
appropriate responsive measures." Johnson v. Testman, 380 F.3d
691, 697 (2d Cir. 2004). See also Wine v. Black, No. 3:18-cv-
00704 (VAB), 2024 WL 2113734, at *8 (D. Conn. May 11, 2024)
("The extent to which . . . exhaustion of a disciplinary appeal
in satisfaction of the PLRA's exhaustion requirement remains
viable depends on whether prison officials had reason from the
disciplinary appeal to be on notice.").

       None of the plaintiff's administrative remedies exhausted
the procedures under Directive 9.6 with respect to the
plaintiff's Fourth Amendment claim.

       The plaintiff's administrative remedy challenging the
denials of his requests for reasonable accommodation asserted
his dissatisfaction with how the Unit ADA Coordinator, who is
not a defendant, carried out her professional duties reviewing

such requests, including his request to modify a later-imposed
medical treatment plan to include a walker. See Jacaruso Decl.,
Attach. 2 (ECF No. 50-8), at 16-20. Neither his administrative
remedy complaining about the ADA Coordinator nor the underlying
requests for a reasonable accommodation put prison officials on
notice that he sought a remedy related to Officer Fiore making
the video recording on May 6, 2020.

The plaintiff filed a disciplinary appeal from his hearing
on the disciplinary charges for his refusal to relinquish his
walker on May 6, 2020. See id. at 9-11. In his appeal, the
plaintiff challenged the process afforded prior to the
disciplinary finding that he was guilty of the charge of
flagrant disobedience. See id. at 9. The plaintiff's
disciplinary appeal does not provide notice to prison officials
that they should consider whether Officer Fiore's conduct on May
6, 2020 required a response. See Ortiz v. McBride, 380 F.3d 649,
654 (2d Cir. 2004) (prisoner was required to separately grieve
Eighth Amendment conditions of confinement claim to satisfy
exhaustion); Ramirez v. Allen, No. 3:17-cv-01335 (MPS), 2018 WL
5281738, at *5, *7 (D. Conn. Oct. 24, 2018) (appeal of
disciplinary finding satisfies exhaustion with respect to due
process claim challenging disciplinary report and hearing but
not conditions of confinement claim).

With his opposition, the plaintiff submits copies of additional grievances that were not included in the attachments to the declaration of Corrigan Administrative Remedies Coordinator Jacaruso. See Pl.'s Opp'n, at 4, 39, 41. Neither of these two administrative remedies creates a genuine issue as to whether the plaintiff exhausted his remedies with respect to his Fourth Amendment claim.

Because the plaintiff did not submit the first page of administrative remedy IGP #27209 (dated May 20, 2020 and marked as received on June 11, 2020), the court cannot determine whether it was filed under Directive 9.6 or 8.9. See Pl.'s Opp'n, at 38-39. However, even assuming that administrative remedy IGP# 27209 was properly filed under Directive 9.6, it contains no information that put prison officials on notice of the plaintiff's complaint about Fiore making the video recording on May 6, 2020. It makes no mention of the video recording, of Fiore or of May 6, 2020.

The plaintiff also submits administrative remedy IGP #27409 (dated July 11, 2020 and marked as received on July 23, 2020). See Pl.'s Opp'n, at 41. In it, the plaintiff did not allege any misconduct by any individual. Rather, he asked "1) whether it was part of a medical treatment plan to video record [him] in [his] cell; and 2) who devised this plan." Id. Even assuming it

-29-

was properly filed under Directive 9.6, IGP #27409 did not include information that put prison officials on notice that they were being asked to respond to the conduct of any correctional officer related to Fiore making the video recording of the plaintiff.

### 2. Excusing Exhaustion

The plaintiff maintains that administrative remedies were unavailable to him due to actions by prison officials. He contends that his administrative remedies are consistently denied; that his inmate request and grievance concerning Officer Fiore's misconduct went unanswered; and that Corrigan Administrative Remedy Coordinator King threatened him.

An "inmate has no obligation to exhaust the remedy" where there is no "potential" for "the possibility of some relief". Ross v. Blake, 578 U.S. 632, 643 (2016) (internal quotation marks and citation omitted). "[O]nce a defendant has adduced reliable evidence that administrative remedies were available to the plaintiff and that the plaintiff nevertheless failed to exhaust those administrative remedies, the plaintiff must then 'counter' the defendant's assertion by showing exhaustion, unavailability, estoppel, or 'special circumstances.'" Smith v. Kelly, 985 F. Supp. 2d 275, 284 (N.D.N.Y. 2013) (footnote omitted).

-30-

The record establishes that there is no genuine issue as to the fact that the plaintiff has failed to show that remedies under Directive 9.6 were unavailable for his Fourth Amendment claim.

### a.    Procedure Which Operates as a Dead End

The plaintiff maintains that the procedure under Directive 9.6 does not permit him to exhaust a claim of staff misconduct that is also the subject of a disciplinary report. Directive 9.6 provides that an inmate may file an appeal after a disciplinary hearing challenging a guilty finding, and the decision on the appeal is final. See Dir. 9.6(10) (ECF No. 50-4, at 10). The plaintiff fails to explain how the procedure under Directive 9.6(10) for disciplinary appeals impeded his ability to complain in an administrative remedy under Directive 9.6(6) about Fiore making a video recording of the plaintiff in his cell on May 6, 2020.

In fact, the plaintiff proffers evidence which shows that he did seek a remedy with respect to Officer Fiore's conduct. See Pl.'s Attach. (ECF No. 59-1), at 26. He submits what appears to be a Level 1 administrative remedy dated June 5, 2020, requesting an "investigation" after he "caught [] Fiore video recording" him. Id. The plaintiff asserts that an administrative remedy was not available because he never received a response to

-31-

this grievance. But the lack of a response did not render an administrative remedy unavailable. Directive 9.6 provides a procedure for an inmate who fails to receive a response. See Dir. 9.6(6)(I), (K) (ECF No. 50-4, at 7) (permitting the filing of a Level 2 appeal if there is no response to a Level 1 administrative remedy within thirty days). Nothing in the record shows that the plaintiff availed himself of the opportunity under 9.6 to file a Level 2 appeal, which is necessary to exhaust the DOC's administrative remedies. See Gibson v. Goord, 280 F.3d 221, 223 (2d Cir. 2002) (inmate failed to exhaust when he "had not pursued the available remedy of filing a level two grievance, which is available when there is no response to a level one grievance" (internal quotation marks and citation omitted)).

The plaintiff filed numerous grievances, some of which were denied on the merits or rejected for procedural non-compliance. The record shows that the plaintiff filed administrative remedies successfully, received review on the merits, and obtained favorable dispositions of "Compromised" for two administrative remedies in 2020.[10] See generally Jacaruso Decl., Attach. 1 (ECF No. 50-7). See id. at 3, 7. Review of the

---

[10] A disposition of "Compromised" means that the "administrative remedy has sufficient merit that some modification of the existing decision is warranted." Dir. 9.6(3)(C).

responses to his administrative remedies shows that prison officials attempted to assist the plaintiff in exhausting his claims. See id. at 11 (advising the plaintiff to "contact the Medical Unit" and/or "submit an Administrative Remedy for a Health Services Review."). See generally Jacaruso Decl., Attach. 3 (ECF No. 50-9) (indicating that the plaintiff was provided with the reasons for returning his grievances without disposition).

Thus, the plaintiff's history with respect to filing grievances demonstrates that Directive 9.6 does not operate as a dead end, with prison officials unable or unwilling to provide him with relief. Cf. Cicio v. Alvarez, No. 19-CV-9883 (CS), 2022 WL 1003796, at *5 (S.D.N.Y. Apr. 4, 2022) ("[T]he superintendent and CORC considered and ruled on [the] [p]laintiff's petitions, albeit belatedly; his pleas did not go into a black hole.").

Thus, the plaintiff is not excused from the exhaustion requirement on this ground.

### b.    Opaque Procedure Incapable of Use

Nor is there any basis for a conclusion that the administrative procedure under the relevant version of Directive 9.6 was "so opaque that it becomes, practically speaking, incapable of use." Ross, 578 U.S. at 643-44. The plaintiff's history with respect to filing grievances demonstrates that the

-33-

plaintiff had the ability to avail himself of his administrative remedies under Directive 9.6 prior to May 6, 2020. Thus, the plaintiff is not excused from the exhaustion requirement on this ground.

### c.    Intimidation, etc.

The exhaustion requirement may be excused "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Ross, 578 U.S. at 644. Courts in this circuit "have excused failure to exhaust where a plaintiff identified an officer or officers who took some specified action to prevent the plaintiff from filing a grievance". Davis v. Grant, No. 15-CV-5359, 2019 WL 498277, at *9 (S.D.N.Y. Feb. 8, 2019) (collecting cases). "An inmate must point to some affirmative action by a prison official that prevented the inmate from availing himself of the grievance procedures." Martinaj v. Uhler, No. 9:18-cv-00257 (BKS/DJS), 2021 WL 3793769, at *7 (N.D.N.Y. Aug. 26, 2021) (citations omitted).

"[V]erbal and physical threats of retaliation, physical assault, denial of grievance forms or writing implements, and transfers constitute such affirmative action." Amador v. Andrews, 655 F.3d 89, 103 (2d Cir. 2011) (citations omitted). See also Ruggiero v. Cnty. of Orange, 467 F.3d 170, 178 (2d Cir.

2006) ("In our prior cases recognizing that defendants' actions may estop them from raising non-exhaustion as a defense, each prisoner alleged that defendants took affirmative action to prevent him from availing himself of grievance procedures. E.g., Ziemba[ v. Wezner], 366 F.3d [161,[]] 162 [(2d Cir. 2004)] (beating, threatening, and denying grievance forms and writing implements); Hemphill[ v. New York], 380 F.3d [680,[]] 687 [(2d Cir. 2004)] (threats of retaliation)."); Cicio v. Alvarez, No. 19-CV-9883 (CS), 2022 WL 1003796, at *4 (S.D.N.Y. Apr. 4, 2022) ("Specific threats of retaliation or intimidation by prison employees can render administrative remedies unavailable." (citation and internal quotation marks omitted)).

Here, the plaintiff claims that Administrative Remedy Coordinator King threatened him with disciplinary action for writing her full name on an Inmate Request form, dated January 7, 2020, in which he complained about a failure to collect inmate requests from the medical unit box. See Pl.'s Opp'n, at 18; Pl.'s Attach. (ECF No. 59-1), at 30. However, King's statement about not including her full name on an inmate request does not support a conclusion that she prevented the plaintiff from filing further grievances, only that she prevented him from using her full name when he did so. There is no evidence that

the plaintiff was thwarted from filing his administrative remedies.

To the contrary, the record shows that the plaintiff continued to avail himself of administrative remedies under Directive 9.6 by filing grievances and disciplinary appeals after January 2020. Thus, the plaintiff is not excused from exhaustion on this ground.

\*    \*    \*    \*

Because there is no genuine issue as to the fact that the plaintiff failed to exhaust his administrative remedies for his Fourth Amendment claim, nor as to the fact that the plaintiff is excused from the PLRA's exhaustion requirement, the motion for summary judgment is being granted as to the Fourth Amendment claim.

### C.    Eighth Amendment Claim

At the initial review stage, the court permitted the plaintiff to proceed on an Eighth Amendment claim for deliberate indifference to medical needs, based on the following:

> The plaintiff alleges that, at the time of the incident he had a valid medical order for the walker. Defendant Phillips removed his walker at defendant Fiore's instruction based on defendant Fiore's statement that the plaintiff was exercising in his cell. After the walker was removed, defendant Verito entered an order discontinuing the walker and defendants Phillips, Muzykoski, and Feder put statements supporting the removal in his medical record in an attempt to conceal the alleged wrongdoing.

-36-

. . . .

. . . . The plaintiff alleges that he had a valid doctor's
order for the walker, but that defendant Phillips removed
the walker based on Officer Fiore's video recording. After
the walker was removed, defendant Verito entered an order
in the plaintiff's medical file discontinuing the walker.
As the plaintiff alleges that orders discontinuing the
walker were not included in the plaintiff's medical records
until later, the allegations are sufficient to survive
initial review.

IRO at 11-12. Thus the basis for the plaintiff's Eighth

Amendment claim is that the defendants removed his walker before

there was a change in his medical file and later made changes to

his medical file to justify the removal of his walker.

### 1.   Defendant Fiore

Claims related to deliberate indifference to an inmate's

health or safety by a correctional officer are subject to the

grievance procedure under Administrative Directive 9.6(6). See

Papantoniou v. Quiros, No. 3:19-cv-01996 (KAD), 2021 WL 4224587,

at *6 (D. Conn. Sept. 16, 2021) ("There is no dispute that

claims related to deliberate indifference to an inmate's health

or safety by a correctional officer are subject to the Inmate

Grievance Procedure set forth in Administrative Directive

9.6(6)"); Fraser v. Durant, No. 3:21-cv-01190 (MPS), 2023 WL

5486265, at *6 (D. Conn. Aug. 24, 2023) (noting claims for

"deliberate indifference to health by correctional staff are

-37-

subject to the inmate grievance procedure" under Directive 9.6).

There is no genuine issue as to the fact that the plaintiff did not exhaust his remedies with respect to his claim that defendant Fiore acted with deliberate indifference to his need for a walker.

The plaintiff's grievance concerning the Unit ADA Coordinator, who is not a defendant, arises from his requests for reasonable accommodations. This grievance makes no claim about defendant Fiore taking away the plaintiff's walker in violation of a previous medical treatment plan. Even though "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances", Jones v. Bock, 549 U.S. 199, 219 (2007), this grievance does not relate to action by Fiore. Rather, it claims that a person who is not a defendant discriminated against the plaintiff.

In administrative remedy IGP #27209, the plaintiff complained about a lack of pain medication and an assistive device. He requested pain medication and return of his assistive device. He also requested removal of the APRN who took him off his pain medication and compensatory damages. He makes no claim against nor refers to the actions of Fiore.

Administrative remedy IGP #27409, posed two questions: "1) whether it was part of a medical treatment plan to video record

[the plaintiff] in [his] cell; and 2) who devised this plan." Pl.'s Opp'n, at 41. Even assuming it was properly filed under Directive 9.6, IGP #27409 does not concern the plaintiff's Eighth Amendment claim. It asks under what authority the video recording of the plaintiff in his cell was made.

These grievances do not make, and thus do not exhaust, any claim against any defendant. Construed most favorably to the plaintiff, neither IGP #27209 nor IGP #27409 mentions facts that put prison officials on notice of the plaintiff's complaint that he had suffered a medical deprivation, i.e., the loss of his walker, as the result of actions by Fiore. See Hill v. Curcione, 657 F.3d 116, 124 (2d Cir. Sep. 15, 2011). Cf. Fluker v. Kelly, No. 3:20-cv-00179 (SVN), 2022 WL 17830730, at *7 (D. Conn. Dec. 21, 2022) (concluding that "[p]laintiff provided enough information to ensure that facility administrators were notified and given the opportunity to take appropriate responsive measures with respect to his Insufficient Evidence claim" (internal quotation marks and citation omitted)), aff'd, No. 23-307, 2024 WL 506578 (2d Cir. Feb. 9, 2024)).

### 2. Defendants Phillips, Muzykoski, Feder, and Verito

At the initial review stage, the court determined the plaintiff could proceed against Nurse Supervisor Phillips, APRN Muzykoski, Dr. Feder, and RN Verito on a claim for deliberate

indifference to his serious medical need to use his walker.
Claims asserting deliberate indifference to an inmate's medical
needs by a medical provider are subject to the administrative
remedy procedures set forth in Administrative Directive 8.9. See
Papantoniou, 2021 WL 4224587, at *6 ("[C]laims related to
deliberate indifference to an inmate's medical needs by a
medical provider or health services administrator, are subject
to the Administrative Remedy for Health Care procedure set forth
in Administrative Directive 8.9.").

The defendants submit the declaration of Nicole Hernandez,
who is DOC's Regional Chief Operating Officer in the Health
Services Administration. Hernandez avers that she researched the
plaintiff's medical grievance history and determined that he
filed one "Health Remedy Grievance (medical grievance)" between
January 1, 2020 and July 1, 2023. Hernandez Decl. ¶ 4 (ECF No.
50-10, at 1).

The defendants have submitted this medical grievance
(#2376) for review of an administrative issue filed by the
plaintiff on July 14, 2022. See Hernandez Decl., Attach. (ECF
No. 50-11), at 2, 4. This grievance complains about medical
decisions made by R. Williams, D. Broadly and Krystal Brennan
that were made after the occurrence of the events at issue in
this lawsuit. This grievance does not relate to any defendant's

allegedly fraudulent alteration of the plaintiff's medical records to cover up wrongful confiscation of the plaintiff's walker by defendant Fiore. It does not put any defendant on notice of an Eighth Amendment claim relating to that conduct because it relates to different conduct by different people at a later point in time.

Also, neither administrative remedy IGP #27209 nor administrative remedy IGP #27409 makes any reference to falsification of the plaintiff's medical records to cover up wrongful confiscation of his walker.

Thus, there is no genuine issue as to the fact that the plaintiff did not exhaust his remedies with respect to his claim that these defendants acted with deliberate indifference to his need for a walker.

### 3.    Excusing Exhaustion

The plaintiff maintains that administrative remedies were unavailable to him due to actions by prison officials. He contends that his administrative remedies are consistently denied, that his inmate request and grievance concerning Officer Fiore's misconduct went unanswered, and that the Corrigan Administrative Remedy Coordinator King threatened him. For the reasons previously discussed, there is no genuine issue as to

the fact that the plaintiff is not excused from the PLRA's exhaustion requirement.

Therefore, because there is no genuine issue as to the fact that the plaintiff failed to exhaust his administrative remedies for his Eighth Amendment claims, nor as to the fact that the plaintiff is not excused from the PLRA's exhaustion requirement, the motion for summary judgment is being granted as to the Eighth Amendment claim.

## IV.    CONCLUSION

For the reasons set forth above, the defendants' Motion for Summary Judgment (ECF No. 50) is hereby GRANTED. The plaintiff's official capacity claims are hereby DISMISSED. See 28 U.S.C. § 1915(e)(2)(B)(ii)-(iii).

The Clerk shall enter judgment in favor of the defendants and close this case.

It is so ordered.

Dated this 18th day of September 2025, at Hartford, Connecticut.


                                    /s/AWT
                            _____
                                Alvin W. Thompson
                            United States District Judge